UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────

CHARLES J. SMITH,

                              Plaintiff,

         v.                                              9:18-CV-1107
                                                         (DNH/DJS)

ANTHONY ANNUCCI, Acting
Commissioner, and JONES,
Superintendent; Cayuga Correctional
Facility,

                              Defendants.
─────────────────────────────────

APPEARANCES:

CHARLES J. SMITH
96-A-6765
Plaintiff, pro se
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011


DAVID N. HURD
United States District Judge

**DECISION AND ORDER**

## I. <u>INTRODUCTION</u>

Pro se plaintiff Charles J. Smith ("Smith" or "plaintiff") filed this civil rights complaint

pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an in forma pauperis ("IFP")

application and a motion for preliminary injunctive relief.  Dkt. No. 1 ("Compl."); Dkt. No. 7

("IFP Application"); Dkt. No. 6 ("Preliminary Injunction Motion").[1]  Plaintiff, who is incarcerated in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Wyoming Correctional Facility, has not paid the filing fee for this action.[2]

## II.  IFP APPLICATION

Smith has submitted a completed and signed IFP Application (Dkt. No. 7) that demonstrates economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate authorization form required in this District.  Dkt. No. 8.  Accordingly, plaintiff's IFP Application is granted.

## III.  SUFFICIENCY OF THE COMPLAINT

### A.  Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[3]  Thus, even if a plaintiff meets the financial criteria to commence an action in forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the

---

[1]   Plaintiff's initial application to proceed IFP was denied as incomplete and the action was administratively closed.  Dkt. No. 3.  Thereafter, plaintiff properly re-filed his IFP Application with the inmate authorization form required in this District, and this action was re-opened.  Dkt. Nos. 7, 8, 9.

[2]   Prior to commencing this action, plaintiff had filed at least four lawsuits in this District.  *See Smith v. Green Haven Corr.*, No. 9:03-cv-0938 (N.D.N.Y. filed July 28, 2003); *Smith v. Atkinson*, No. 9:04-cv-0038 (N.D.N.Y. filed Jan. 13, 2004); *Smith v. Curcio*, No. 9:08-cv-0198 (N.D.N.Y. filed Feb. 19, 2008); *Smith v. Fischer*, No. 9:11-cv-1075 (N.D.N.Y. filed Sept. 12, 2011).

[3]   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

2

plaintiff to proceed with this action in forma pauperis. *See id*.

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate prisoner pro se complaints).

In reviewing a pro se complaint, the court has a duty to show liberality toward pro se litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the

plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotation marks and alterations omitted).

### B. Summary of the Complaint

Smith alleges wrongdoing that occurred while he was incarcerated at Cayuga Correctional Facility ("Cayuga C.F."). *See generally* Compl. The following facts are set forth as alleged by plaintiff in his complaint.[4]

On or about July 17, 2018, Smith "put in a few (week-long) law library request slips detailing both the time(s) and date(s) [he] would be needing full access to the law library." Compl. at 6. Plaintiff submitted these requests based on an anticipated filing deadline in a pending New York State Court of Claims proceeding. *Id.* As of that date, plaintiff was working in the messhall. *Id.* Plaintiff requested access to the law library beginning at 12:30 p.m., which is when he was able to leave work. *Id.*

---

[4] Plaintiff references two exhibits in his complaint: Exhibit A and Exhibit B. Compl. at 12. After submitting his complaint, plaintiff submitted a cover letter with Exhibit B, which was not attached to the complaint. *See* Dkt. No 4; Dkt. No. 4-1. For the sake of clarity, the Clerk is directed to attach Exhibit B (Dkt. No. 4-1) as an exhibit to the complaint.

On July 18, 2018, Smith received a filing from the New York State Attorney General's Office in his Court of Claims proceeding, which triggered the start of his response deadline and corresponding need for law library access. Compl. at 6.

On July 19, 2018, Corrections Officer R.T. Jaynes (not a defendant) refused to allow Smith to leave work at "the normal 12:30 time, and thereafter went about creating -- via falsehood -- a chain of events that caused a continued deprivation of access to the law library and access to the court that lasted over the span of at least [plaintiff's response] deadline[.]" Compl. at 6.

More specifically, Officer Jaynes sought to "hold [plaintiff] up" when he attempted to leave the messhall for "over thirty (30) minutes past [plaintiff's] departure time." Compl. at 6. After Smith repeatedly informed Officer Jaynes that he is scheduled to be in the law library, plaintiff "sought to retrieve and speak to" a corrections sergeant concerning Officer Jaynes's conduct. *Id.* In response, Officer Jaynes "sent an emergency call to a response team[,]" which resulted in plaintiff being escorted to the segregated housing unit ("SHU") and falsely charged with several infractions. *Id.*; Dkt. No. 1-1 at 2.

On July 20, 2018, while Smith was confined in SHU, he attempted to send a letter to the Court of Claims. Compl. at 9. A few days later, plaintiff attempted to send a letter to the Southern District of New York. *Id.* A few days after that, plaintiff attempted to send a letter to the Executive Branch of the State of New York's Department of Clemency. *Id.*

On each of these days, as well as on days in between, Smith also "repeatedly" submitted law library request forms "requesting various law library materials." Compl. at 9. Plaintiff did not receive a response to any of the letters he attempted to send or any of his requests for law library services. *Id.* Plaintiff's requests for notary services were also

5

ignored.  *Id.*

At some point after Smith was taken to SHU on July 19, 2018 but before July 22, 2018, plaintiff "was allowed to view and search through [his] property after it was seized[.]"  Compl. at 10-11.  Plaintiff noticed that various articles of clothing were missing, along with a hot pot and legal work in his pending Court of Claims action.  *Id.* at 10.  Plaintiff questioned "staff" about his missing property, and was told to "file an institutional claim for any missing property."  *Id.* at 11.  Plaintiff filed institutional claims regarding his missing property.  *Id.*

At some point after Smith was placed in SHU on July 19, 2018, and before the completion of his disciplinary hearing on August 9, 2018, defendant Superintendent Jones saw plaintiff during "routine rounds."  *Id.* at 7-8.  By this time, defendant Jones was aware of plaintiff's "open Court of Claims suit against the State" and his "granted requests (and the need) for using the law library."  *Id.* at 7.  Defendant Jones was also aware that plaintiff was a member of the inmate liaison committee whom he previously "worked with . . . on prison development many times[.]"  *Id.*  Nonetheless, defendant Jones failed to ask plaintiff why he was in SHU on any of the occasions that he made rounds, or otherwise remedy the wrong.  *Id.*

After seeing defendant Jones pass his cell for "a week or so" without any communication, Smith filed a grievance regarding his wrongful confinement in SHU and the destruction of his property.  Compl. at 7.  Defendant Jones declined to investigate the claims in plaintiff's grievance, and instead took the position that a claim of false charges should be "handled . . . via the disciplinary hearing . . . process[.]"  *Id.*

On August 5, 2018, Smith spoke with another inmate in SHU, who advised plaintiff

that he received responses to his law library requests.  Compl. at 9.

On August 7, 2018, Smith and this other inmate both submitted a law library request.  Compl. at 9.  The other inmate received law library materials the next day in response to his request, but plaintiff received nothing.  *Id.*  Plaintiff submitted a grievance regarding the misconduct, and thereafter, he "started receiving law library materials."  *Id.*

During Smith's disciplinary hearing, which occurred between July 24, 2018 and August 9, 2018, Hearing Officer Quill (not a defendant) refused to consider plaintiff's defense that the charges against him were false, and instead expressed her "personal beliefs as to what may have happened," to which plaintiff objected.  Compl. at 7-8.

In finding Smith guilty of the charges, she also failed to provide "the required statement for the record that she deem that the testimony of the writer of the report (and the charges) [are] true and [credible]."  Compl. at 8.  Plaintiff was sentenced to 75 days in SHU, 75 days of lost recreation, package, commissary, and phone privileges, and two months of lost good time credits.  Dkt. No. 1-1 at 2.  Plaintiff appealed the disciplinary determination to the Commissioner of DOCCS, defendant Annucci, and separately filed a grievance concerning the "false confinement[,]" "untruthful report[,]" and "confiscation of [his] property."  Compl. at 8.  As of the filing date of the complaint, plaintiff had yet to receive a "final decision" on his appeal.  *Id.*

Smith remained in SHU at Cayuga C.F. until he was transferred to Orleans Correctional Facility ("Orleans C.F.") on August 27, 2018.  Compl. at 10.  Although plaintiff obtained access to law library materials after he filed a grievance on the subject, the materials he received were "inadequate . . . when they did come."  *Id.*  As a result, plaintiff "continued the appeal of the grievance" to defendant Jones, submitting a grievance to him

that was picked up for delivery on August 27, 2018.  *Id.*

On August 30, 2018, after Smith arrived at Orleans C.F., he learned from a corrections officer tasked with unpacking his property that several items that he was told were packed were not.  Compl. at 11.

Construed liberally, Smith asserts the following claims against defendants Annucci and Jones:  (1) First Amendment retaliation claims; (2) First Amendment denial of access-to-courts claims; (3) First Amendment free-flow-of-mail claims; (4) a Fourteenth Amendment due process claim based on the destruction of plaintiff's property; and (5) a Fourteenth Amendment disciplinary due process claim based on the creation and acceptance of a false misbehavior report.  *See generally* Compl.

Smith seeks an award of monetary and non-monetary damages.  Compl. at 13-18. For a complete statement of plaintiff's claims, refer to the complaint.

### C.  <u>Analysis</u>

Smith brings this action pursuant to Section 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).

8

"[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." *Iqbal*, 556 U.S. at 676.

Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that *Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal* ] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" (citing *Grullon*, 720 F.3d at

9

139)).  For purposes of this Decision and Order, it is assumed that all five categories under *Colon* remain valid.

### 1. Official Capacity Claims

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity."  U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").  Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit.  *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009).

It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the claims asserted in Smith's complaint.  *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996).  Moreover, actions for damages against a state official in his or her official capacity are essentially actions against the state.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).[5]

---

[5]  In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  Under the doctrine, a suit may proceed, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted).  In this case, the facts alleged do not plausibly suggest an ongoing violation of federal law.

Accordingly, insofar as Smith seeks relief pursuant to Section 1983 against the defendants in their official capacities, those claims are barred by the Eleventh Amendment and are hereby dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

## 2. **Retaliation Claims**

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (quoting *Dawes*, 239 F.3d at 492).

"[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). It is well-settled that filing a grievance is constitutionally protected conduct. *Johnson v. Eggersdorf*, 8 Fed. App'x 140, 144 (2d Cir. 2001) (summary order).

"A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119,

129 (2d Cir. 2009) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *accord Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 554 (2d Cir. 2001)).

Smith's complaint alleges that a non-party Corrections Officer issued him a false misbehavior report. Plaintiff further alleges that a different non-party Corrections Officer interfered with his mail and denied him law library services in retaliation for a lawsuit plaintiff filed that is pending in the Court of Claims. But the complaint is devoid of any allegations which plausibly suggest that either of the named defendants were personally involved in either of the alleged incidents of adverse action.

Nor does Smith allege facts which plausibly suggest that the isolated incidents of retaliation he experienced, by two different low ranking corrections officials, occurred pursuant to a policy or custom that the named defendants created or permitted. Nor does the complaint plausibly suggest that these isolated instances of alleged retaliation were the result of a failure to adequately train or supervise subordinates. *See Samuels v. Fischer*, 168 F. Supp. 3d 625, 638 (S.D.N.Y. 2016) (noting that to support a finding of personal involvement on the basis of "the fourth *Colon* factor, i.e., that 'the defendant was grossly negligent in supervising subordinates who committed the wrongful acts[,]' a "plaintiff must show that the defendant knew or should have known that there was a high degree of risk that his subordinates would behave inappropriately, but either deliberately or recklessly disregarded that risk by failing to take action that a reasonable supervisor would find necessary to prevent such a risk, and that failure caused a constitutional injury to Plaintiff" (quoting *Colon*, 58 F.3d at 873)).

In addition, while Smith alleges that he submitted a grievance to defendant Jones regarding the alleged false misbehavior report, the complaint is devoid of any allegations

which plausibly suggest that plaintiff advised defendant Jones (or defendant Annucci) in a grievance or otherwise that he received the misbehavior report *because of* the lawsuit that he filed in the Court of Claims (such that personal involvement could possibly be based on a failure-to-remedy theory). Thus, at most, the allegations in the complaint plausibly suggest that plaintiff put defendant Jones on notice as to his belief that the misbehavior report he received was false.

However, the issuance of a false misbehavior report (and thus the failure to remedy it) does not state a constitutional claim for relief. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982 (1988)); *accord, Pittman v. Forte*, No. 9:01-CV-0100, 2002 WL 31309183, at *5 (N.D.N.Y. July 11, 2002) (Sharpe, M.J.); *see also Santana v. Olson*, No. 07-CV-0098, 2007 WL 2712992, at *2 (W.D.N.Y. Sept. 13, 2007) ("[T]he filing of a false behavior report by a correctional officer does not state a claim for relief.").

Similarly, the complaint is devoid of any allegations which plausibly suggest that Smith advised defendant Jones (or defendant Annucci) in a grievance or otherwise that he was denied access to law library materials *because of* the lawsuit that he filed in the Court of Claims. In any event, by plaintiff's own allegations, defendant Jones did not become aware of the alleged deprivation of his access to law library materials until after the deprivation was no longer occurring. *See* Compl. at 8.

A supervisory official confronted with a constitutional violation that has already occurred and is not ongoing cannot be found personally responsible for failing to "remedy"

the violation. *See Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008). Accordingly, Smith's retaliation claims against defendants Annucci and Jones are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 3. **Access-To-Courts Claims**

Interference with a prison inmate's legal mail "implicates [his] rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis*, 320 F.3d at 351.

The "right of access to the courts," requires States "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *modified on other grounds, Lewis v. Casey*, 518 U.S. 343, 350 (1996); *see also Bourdon v. Loughren*, 386 F.2d 88, 92 (2d Cir. 2004).[6]

"However, this right is not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" *Collins v. Goord*, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting *Lewis*, 518 U.S. at 351).

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. *Lewis*, 518 U.S. at 353; *Konigsberg v. Lefevre*, 267 F. Supp. 2d 255, 261 (N.D.N.Y. 2003) ("Prison officials may only be held liable for such injury if they frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim.").

---

[6] "[A] person's right of access to the courts has been found to arise not only under the First Amendment but under other parts of the Constitution, including the Due Process Clause of the Fourteenth Amendment." *Lasher v. Dagostino*, No. 9:16-CV-0198 (BKS), 2016 WL 1717205, at *4 (N.D.N.Y. Apr. 28, 2016) (collecting cases).

"A hypothetical injury is not sufficient to state a claim for violation of the right of access to the courts." *Amaker v. Haponik,* No. 98-CV-2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999).

Instead, a plaintiff must demonstrate "actual injury" by establishing that the denial "hindered his efforts" to pursue a non-frivolous legal claim. *Lewis*, 518 U.S. at 349, 351-53; *see also O'Diah v. Fischer*, No. 9:08-CV-941 (TJM/DRH), 2012 WL 987726, at *12 (N.D.N.Y. Feb. 28, 2012) (recommending denial of motion to dismiss access-to-courts claim where plaintiff alleged that "he provided Hahn, Shaw, Swierk and Moscicki his legal mail at various times in June of 2008, but that they intentionally failed to send the mail out" and his "Article 78 case filed in Cayuga County was [subsequently] dismissed"), *report and recommendation adopted by* 2012 WL 976033 (N.D.N.Y. Mar. 22, 2012).

"Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis*, 320 F.3d at 352 (citing *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

The Supreme Court has stated that in order to allege a denial of access to the courts claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint . . . ." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

The Supreme Court instructed that the underlying claim "must be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher*, 536 U.S. at 415-16. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id*. at 417-18 (footnote

15

omitted).

Smith alleges that he was denied access to the law library for more than ten consecutive days beginning on July 19, 2018, and that certain of his legal mail was not delivered while he was in SHU.  Plaintiff, however, fails to allege any facts which plausibly suggest that he suffered an "actual injury" in any of his court proceedings as a result of these alleged acts of wrongdoing committed by low ranking corrections officials.

Thus, Smith's access-to-courts claim against the named defendants (under a theory of supervisory liability) must be dismissed.  *See Toole v. Connell*, No. 9:04-CV-0724 (LEK/DEP), 2008 WL 4186334, at *7 (N.D.N.Y. Sep. 10, 2008) (Peebles, M.J.), *report and recommendation adopted by* 2008 WL 4186334, at *1 (supervisory defendant cannot be liable for failing to investigate or correct conduct that has already been found to be not actionable under section 1983).

Smith's access-to-courts claims against the named defendants are also alternatively subject to dismissal because the complaint is devoid of any allegations which plausibly suggest that either of the named defendants were personally involved in the alleged deprivations.  Indeed, by plaintiff's own allegations, he was transferred out of Cayuga C.F. on the same date that his grievance about law library materials was picked up by the "grievance office to be process[ed] for appeal to the Superintendent[,]" and after the alleged acts of wrongdoing had stopped.  Compl. at 3, 9-10.

Thus, the allegations in the complaint fail to plausibly suggest that defendant Jones (or defendant Annucci) even knew about the alleged denials of Smith's ability to access the courts and law library materials while the deprivations were ongoing, and plaintiff's allegations that the deprivations occurred pursuant to a policy or custom, or as a result of

inadequate training, are entirely conclusory.

Accordingly, Smith's access-to-courts claims against defendants Annucci and Jones are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 4. Free-Flow-of-Mail Claims

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." *Davis*, 320 F.3d at 351.

A prisoner's mail may only be restricted to further "'one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" *Id.* (quoting *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986)).

"The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011).

As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" *Davis*, 320 F.3d at 351.

"While a prisoner has a right to be present when his legal mail is opened, . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis*, 320 F.3d at 351 (citations omitted).

However, in *Washington v. James*, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents

17

suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received."  *Davis*, 320 F.3d at 351 (citing *Washington*, 782 F.2d at 1139); *see also Turner v. Safley*, 482 U.S. 78, 84-91 (1987) (prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

Smith alleges that on at least three occasions during his confinement in SHU at Cayuga C.F., legal mail he provided to one or more corrections officials for mailing was not mailed.  Plaintiff does not allege facts which plausibly suggest that these isolated instances of alleged mail tampering by low level officials were the result of a failure to adequately train or supervise subordinates.  *See Samuels*, 168 F. Supp. 3d at 638; *White*, 2010 WL 624081, at *6.  Nor does he allege facts which plausibly suggest that his mail was interfered with pursuant to a policy or practice.

To the contrary, Smith alleges facts which plausibly suggest that the same corrections officials were responsible for both law library request forms and inmate mail, and another inmate confined to SHU during the same time as plaintiff received law library materials in response to his requests.  Compl. at 9.  Moreover, the allegations in the complaint plausibly suggest that, by the time the named defendants may have learned about the alleged deprivations of his access to mail, the wrongdoing had stopped.  *Id.*  Thus, the complaint is devoid of any allegations which plausibly suggest that either of the named defendants were personally involved in the alleged interference with plaintiff's mail.

Accordingly, Smith's free-flow-of-mail claims against defendants Annucci and Jones are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to

state a claim upon which relief may be granted.

### 5.  **Fourteenth Amendment Destruction of Property Claim**

The Supreme Court has held that the unauthorized intentional destruction of prisoner's property may not be the basis for due process claims if sufficient post deprivation remedies are available to address the claim.  *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 541 (1981)); *see also Rivera-Powell v. New York City Board of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) ("When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post deprivation remedy.").

However, "New York in fact affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action." *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001); *Davis v. New York*, 311 Fed. App'x 397, 400 (2d Cir. 2009) (summary order) ("The existence of this adequate post-deprivation state remedy would thus preclude [plaintiff's] due process claim under § 1983 [for lost personal property].").

Smith claims that certain of his personal property was lost or destroyed by non-party corrections officers following his transfer to SHU on July 19, 2018, and again around the time he was transferred to Orleans C.F.  Compl. at 2.  Plaintiff has failed to allege that adequate post-deprivation remedies to recover the value of his destroyed property were unavailable.[7]

Thus, the complaint is devoid of any allegations which plausibly suggest that Smith was denied due process when his personal property was allegedly lost or destroyed.   Plaintiff's destruction of property claim against the named defendants is also

---

[7]  To the extent plaintiff's claim is based on the destruction of legal materials, as stated above, plaintiff has failed to allege facts which plausibly suggest that he suffered an actual injury in any of his court proceedings.

alternatively subject to dismissal because the complaint is devoid of any allegations which plausibly suggest that either of the named defendants were personally involved in the alleged destruction of his personal property. Accordingly, plaintiff's destruction of property claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 6. <u>Fourteenth Amendment Disciplinary Due Process Claim</u>

To successfully state a claim under Section 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin,* 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner,* 515 U.S. 472 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 483-84; *Tellier,* 280 F.3d at 80; *Hynes,* 143 F.3d at 658.

To determine whether an inmate has suffered an "atypical and significant hardship," the conditions imposed upon the inmate must be compared with those imposed upon the rest of the general population of the facility as well as those in administrative and protective confinement. *See Welch v. Bartlett*, 196 F.3d 389, 393 (2d Cir. 1999); *see also Vega v. Lantz*, 596 F.3d 77, 83 (2d Cir. 2010) ("To be actionable, the liberty interest must subject the

20

prisoner to 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'") (quoting *Sandin*, 515 U.S. at 484).

When assessing the severity of the hardship imposed, a court should take into account both the duration and the conditions of the confinement, where appropriate. *See Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998).

While not the only factor to be considered, the duration of a disciplinary confinement remains significant under *Sandin*.[8] *Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000). Specifically, while under certain circumstances confinement of less than 101 days could be shown to meet the atypicality standard under *Sandin* (*see Colon*, 215 F.3d at 232 n.5), the Second Circuit generally takes the position that disciplinary confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under "normal conditions." *Ortiz*, 380 F.3d at 654; *Colon*, 215 F.3d at 231.

The due process protections afforded inmates facing disciplinary hearings that affect a liberty or property interest include advance written notice of the charges, a fair and impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, *Wolff*, 418 U.S. at 563-67). The hearing officer's findings must be supported by "some" "reliable evidence." *Id*. (citing, inter alia, *Superintendent v. Hill*, 472

---

[8] For example, segregation for a period of thirty days was found by the Supreme Court in *Sandin* not to impose a significant hardship on an inmate. *Sandin*, 515 U.S. at 485-86. In explaining its reasoning, the Court found that the disciplinary confinement failed to present "a dramatic departure from the basic conditions" of an inmate's normal sentence. *Id*.

U.S. 445, 455 (1985)).

Smith alleges that he was sentenced to serve 75 days in SHU as a result of Hearing Officer Quill's disciplinary determination, and that he appealed that determination to defendant Annucci. Compl. at 3, 6-8. However, by plaintiff's own allegations, he filed his complaint in this action before he received a decision from defendant Annucci on his appeal. *See id.* at 8.

Thus, whether or not a claim may proceed against defendant Annucci for failure to remedy the Hearing Officer's alleged due process violation cannot be decided at this time. In other words, there currently exists no basis on which to conclude that defendant Annucci was personally involved in denying Smith his due process rights. *See Williams v. Annucci*, No. 16-CV-7288, 2018 WL 3148362, at *7 (S.D.N.Y. June 27, 2018) (concluding, where plaintiff was afforded a rehearing on a Tier III disciplinary decision, and plaintiff filed his federal lawsuit after the rehearing was held, but prior to appealing the determination, that his lawsuit was premature).

Moreover, the complaint lacks allegations which plausibly suggest that Hearing Officer Quill's disciplinary determination occurred as a result of inadequate training, or pursuant to a policy or practice that defendant Jones created or allowed to continue. Thus, the complaint is devoid of any allegations which plausibly suggest that defendant Jones was personally involved in the alleged due process violation. Accordingly, Smith's disciplinary due process claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### D. Conditional Dismissal with Leave to Amend

Based on the foregoing, Smith's complaint is subject to dismissal under 28

U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state any claims upon which relief may be granted.  However, in light of his pro se status, plaintiff will be afforded the opportunity to file an amended complaint.  See Gomez v. USAA Fed. Savings Bank, 171 F.3d 794, 796 (2d Cir. 1999).

Any amended complaint filed by Smith must bear his original signature, and must be a complete pleading which will supersede and replace the original complaint in its entirety.  Plaintiff must name one or more defendants, and must set forth a short and plain statement of the facts he relies on in support of his claim that the individual named as a defendant engaged in misconduct or wrongdoing that violated plaintiff's constitutional rights.

Smith is forewarned that, if he fails to submit an amended complaint within thirty (30) days of the filing date of this Decision and Order, the Court will, without further order, dismiss this action without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## IV.  PRELIMINARY INJUNCTION MOTION

Smith seeks non-monetary relief compelling the named defendants "from doing such things as (1) stealing [his] legal work and Court of Claims papers; (2) denying [him] access to [the] law library; (3) preventing [him] from adequately preparing [his] case[,] putting [him] in SHU to restrict [him] from pursuing [his] case; and (4) placing upon [him] false charges[.]"  Compl. at 14.

Smith further seeks an injunction "to remove [the] disciplinary conviction . . . off of [his] institutional record . . .[,] prevent any rehearing of the fraudulent charges[,] compel [sic] [defendant Annucci] . . . to . . . discipline and properly train and supervise his subordinate officers throughout the state . . . [and] investigate such policies that saids [sic] false charges

23

are not to be investigated in or outside a disciplinary hearing, and or are allowed to be used for the purposes of a disciplinary hearing." Compl. at 16.

Smith has also filed a motion for injunctive relief, in which he seeks an order enjoining the named defendants (and their successors, agents, and employees) from denying his constitutional rights, issuing false misbehavior reports, and refusing to answer his Freedom of Information Law requests. *See* Preliminary Injunction Motion at 1-2.

Because the complaint will be preliminarily dismissed, Smith's Preliminary Injunction Motion is denied as moot. In the event plaintiff files an amended complaint in compliance with this Decision and Order, he may renew his motion.

The Court notes, however, that Smith's claims arise solely out of occurrences while he was confined at Cayuga C.F., and plaintiff does not appear to allege any ongoing harm since he was transferred to another correctional facility before commencing this action. *See generally* Compl.

"In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Shepherd v. Goord*, 662 F.3d 603, 610 (2d Cir. 2011) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)). In *Shepherd*, the Court concluded that speculation that a plaintiff may be transferred again in the future does not warrant a departure from the principle enunciated in *Salahuddin*. *Id*.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1. Plaintiff's IFP Application (Dkt. No. 7) is **GRANTED**;[9]

2. The Clerk of the Court shall provide the Superintendent of the facility, designated by plaintiff as his current location, with a copy of plaintiff's authorization form (Dkt. No. 8), and notify the official that this action has been filed and that plaintiff is required to pay to the Northern District of New York the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;[10]

3. The Clerk shall provide a copy of plaintiff's authorization form (Dkt. No. 8) to the Financial Deputy of the Clerk's Office;

4. The Clerk shall attach Exhibit B (Dkt. No. 4-1) as an exhibit to the complaint;

5. If plaintiff wishes to proceed with this action, he must file an amended complaint as directed above **within thirty (30) days** from filing date of this Decision and Order;

6. If plaintiff timely files an amended complaint, this matter be returned to the Court for further review;

7. If plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment indicating that this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case;

---

[9] Although his IFP Application has been granted, plaintiff will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[10] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

8.  All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

9.  Plaintiff must comply with all requests by the Clerk's Office for any documents that are necessary to maintain this action;

10.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court;

11.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so may result in the dismissal of this action**;

12.  Plaintiff's motion for preliminary injunctive relief (Dkt. No. 6) is **DENIED without prejudice** to renew at some future time for the reasons stated above; and

13.  The Clerk shall serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

Dated:  November 9, 2018
        Utica, New York.

_____
United States District Judge