UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES J. SMITH,

                              Plaintiff,

                                                          9:18-CV-1107
             v.                                           (DNH/DJS)

JAYNES, *Corrections Officer*,

                              Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CHARLES J. SMITH
Plaintiff, *Pro Se*
96-A-6765
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051

HON. LETITIA JAMES                              RICHARD C. WHITE, ESQ.
Attorney General of the State of New York       Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Charles Smith brought this civil rights action, alleging violations

of his constitutional rights pursuant to 42 U.S.C. § 1983, as well as state law negligence

claims while he was in the custody of the Department of Corrections and Community

Supervision ("DOCCS") at Cayuga Correctional Facility ("Cayuga"). *See* Dkt. No. 14,

Am. Compl.  On initial review of the Amended Complaint pursuant to 28 U.S.C. §§

- 1 -

1915(e) and 1915A, the District Court dismissed a number of Plaintiff's claims, allowing only Plaintiff's First Amendment retaliation claim against Defendant Jaynes to proceed. Dkt. No. 16. Defendant has now filed a Motion for Summary Judgment, seeking to dismiss the Amended Complaint on the basis that Plaintiff failed to exhaust his administrative remedies before filing this action. Dkt. No. 49. Plaintiff has filed an opposition, *see* Dkt. Nos. 52 & 53;[1] Defendant has filed a reply, *see* Dkt. No. 55; and Plaintiff has filed a sur-reply, *see* Dkt. No. 56.

For the reasons that follow, the Court recommends Defendant's Motion be denied without prejudice to renew.

## I. BACKGROUND

Plaintiff filed the present civil rights Amended Complaint alleging wrongdoing that occurred while he was incarcerated at Cayuga in the custody of DOCCS. The Amended Complaint alleges that on July 19, 2018, Defendant gave Plaintiff a direct order preventing him from leaving the messhall for the law library, thereby hindering Plaintiff's legal work. Am. Compl. at pp. 16-17. Plaintiff requested to speak with the area supervisor, and in response Defendant had Plaintiff escorted to the Special Housing Unit ("SHU"), and he then issued Plaintiff a false misbehavior report. *Id.* at pp. 17, 19. Corrections Officers moved Plaintiff's personal property to the SHU, and on July 22, 2018, Plaintiff examined his property and noticed that certain items were not present. *Id.*

---

[1] In his "notice of motion," Plaintiff includes a request to "allow amendment of the presently amended complaint for purpose of clarifying claims which already states a cause of action." Dkt. No. 52 at p. 1. Plaintiff makes no further mention of any request to amend his complaint in his submissions to the Court, and it is unclear to the Court what, if any, specific request Plaintiff may have intended to make. Should this matter proceed following a decision on Defendant's Motion, Plaintiff may revisit the issue of making a motion to amend his Amended Complaint.

at p. 14.  Plaintiff's only claim that remains in this case is a First Amendment retaliation claim alleging that Defendant issued a false misbehavior report in retaliation for Plaintiff's request to speak with a sergeant regarding Defendant's direct order and for Plaintiff's filing of a lawsuit against another corrections official from Cayuga.  *Id.* at pp. 15-17 & 19.

Plaintiff filed two grievances regarding the transfer of his property and the allegedly missing items.  Dkt. No. 49-2, Swan Decl.,[2] ¶¶ 16 & 17, Exs. B & C.  He also alleges that he submitted a separate grievance regarding Defendant's retaliation which was never filed.  *See* Dkt. No. 52-1 at ¶ 20.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

---

[2] Plaintiff takes issue with the Swan Declaration because Swan did not begin his current job until the month of the underlying events, and therefore may not have held that position at the relevant time.  Dkt. No. 52-1 at ¶¶ 12-14. Mr. Swan's declaration is based on his review of records, however, not on his personally having witnessed the events at issue in this case.  To the extent Plaintiff takes issue with the declaration being made pursuant to 28 U.S.C. § 1746, such a declaration is acceptable.  28 U.S.C. § 1746; *see LeBoeuf, Lamb, Green & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 65-66 (2d Cir. 1999).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin,* 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc*., 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.

- 4 -

1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[S]ummary judgment should only be granted [i]f *after discovery,* the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.  The nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.  Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks and citations omitted).

## III.  DISCUSSION

### A.  Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  Exhaustion in prisoner

cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v.*

*Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

## B. Whether Plaintiff Exhausted His Administrative Remedies

Defendant contends that Plaintiff did not exhaust his administrative remedies as to his remaining claim. Defendant asserts that Plaintiff did not file any grievances regarding the alleged retaliation. Dkt. No. 49-1, Def.'s Mem. of Law, pp. 7-10. In particular, he points out that Plaintiff filed a grievance on the date he alleges Defendant retaliated against him, but that grievance does not mention Defendant or contain any allegations pertaining to that alleged retaliation; rather, it deals with how Plaintiff's personal property was handled when he was transferred to SHU. *Id.* at p. 7. Plaintiff filed another grievance on July 23, 2018 that also dealt with his personal property. *Id.* This grievance was consolidated with Plaintiff's July 19 grievance, into one grievance. *Id.* at pp. 7-8.

Plaintiff filed four grievances while he was at Cayuga. Swan Decl. at ¶¶ 15-19, Exs. A-D. The first was filed in May of 2018, before the events at issue allegedly occurred. *See* Swan Decl., Ex. A. Plaintiff also filed a grievance on August 14, 2018,

alleging that the law library had failed to process some of his requests, which does not relate to the subject of this lawsuit. *Id.*, Ex. D. Plaintiff concedes that the July 19, 2018 grievance on file does not relate to the remaining claim in this case. Dkt. No. 52-1 at ¶ 20. He alleges that he filed an additional grievance that specifically pertained to Defendant's alleged retaliation, which was never filed. *Id.* Because the grievance that Plaintiff claims would be relevant was never filed, Plaintiff did not exhaust his administrative remedies regarding Defendant Jaynes' alleged retaliation.

Plaintiff also contends that he exhausted this issue by appealing his disciplinary determination. Dkt. No. 52-1 at ¶ 36. However, an appeal of the disciplinary process would not suffice to exhaust Plaintiff's retaliation claim against Defendant. "Though a disciplinary appeal is sufficient to exhaust a claim that Plaintiff was deprived of due process at a disciplinary hearing, 'allegations of staff misconduct related to the incidents giving rise to the discipline must be grieved.'" *Barker v. Smith*, 2017 WL 3701495, at *3 (S.D.N.Y. Aug. 25, 2017) (citations omitted). "Where the inmate is asserting both retaliation claims and procedural due process claims, he must separately exhaust both types of claim, using the procedure appropriate to each type of claim." *Johnson v. Fraizer*, 2016 WL 7012961, at *4 (W.D.N.Y. Dec. 1, 2016) (citations omitted); *see also Mateo v. Gundrum*, 2013 WL 5454722, at *8 (N.D.N.Y. Sept. 30, 2013) ("An inmate claiming that a disciplinary procedure has been instituted or unfairly conducted as the result of retaliatory motives must [ ] follow the IGP three-step process rather than the disciplinary hearing appeal process in order to properly exhaust administrative remedies."). Plaintiff's claim against Defendant Jaynes is that he retaliated against him

by writing a false misbehavior report; as such Plaintiff was required to follow the three-step grievance process in order to exhaust his remedies. The Court recommends finding that Plaintiff did not exhaust his administrative remedies.

### C. Whether Plaintiff's Failure to Exhaust May be Excused

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court stated in Ross, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Plaintiff asserts many reasons why he should be excused from the exhaustion requirement. Primarily, he argues that administrative remedies were unavailable to him because: (1) he submitted a relevant grievance, and believed that it had been consolidated with the two grievances that had been successfully filed and consolidated in July; (2) he was misled by a corrections officer who told him that he had to exhaust the issue through appealing the disciplinary process; and (3) he submitted a relevant grievance, but staff at Cayuga failed to file it.

Initially, Plaintiff contends that he filed a grievance regarding his claim, and that he believed it was consolidated with the two other July, 2018 grievances which had been consolidated.  Dkt. No. 52-1 at ¶ 26.  However, Plaintiff appealed that consolidated grievance twice, and although in his appeals he discussed the content of the other grievances, he never mentioned anything pertaining to Defendant Jaynes's alleged retaliation.  *See* Dkt. No. 52-2 at p. 5.  Plaintiff also states that he has not received a response from his appeal of the consolidated grievances to CORC.  Dkt. No. 52-1 at p. 8, note 12.  Therefore, even if the third grievance Plaintiff describes had been included in the consolidated grievance, he would not have exhausted his administrative remedies. *See Brown v. Dubois*, 2018 WL 2078823, at *1 (N.D.N.Y. Apr. 10, 2018) ("Included within the IGP's exhaustion requirement is the prerequisite that the inmate must file an appeal with the [CORC] and receive a response from the CORC before filing a federal lawsuit.").

"Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d at 97; *see also Roebuck v. Hudson Valley Farms, Inc.*, 208 F.R.D. 34, 36 (N.D.N.Y. 2002) (finding summary judgment premature where plaintiff had not yet been afforded opportunity to conduct relevant discovery).  Here, the record is at best incomplete as to Plaintiff's remaining arguments and could be made clearer following full discovery such that denial of the Motion at this time is appropriate.

Plaintiff makes two additional arguments suggesting that his failure to exhaust should be excused.  First, he contends that he was misled by an officer who advised him

- 10 -

that the issue had to be handled through the disciplinary process.  Dkt. No. 52-1 at ¶ 39.
Second, Plaintiff contends that he actually did submit a grievance regarding the claim in
this case, and describes the grievance's content, as well as the date and manner in which
he submitted it.  Dkt. No. 52-1 at ¶ 20.  Plaintiff alleges that this grievance was lost or
disregarded; he explains that inmates in SHU are unable to submit grievances themselves,
and have to depend on staff making rounds, and so he totally lacked control over the
process.  *Id.* at ¶¶ 17 & 21.

These matters present distinct questions of fact that cannot be resolved here.  While
the Court has the ability to order an exhaustion hearing, *see Messa v. Goord*, 652 F.3d
305, 309 (2d Cir. 2011), doing so here without the benefit of discovery would not be the
most efficient manner in which to resolve the factual disputes presented here.  Rather, the
Court recommends that the Motion for Summary Judgment be denied as premature.[3]

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No.
49) be **DENIED** without prejudice to renew; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-
Recommendation and Order upon the parties to this action.

---

[3] A motion filed after discovery would present both a more complete record regarding exhaustion, including with
regard to Plaintiff's asserted basis for excusing his apparent failure to exhaust and, should the parties desire, the
merits of Plaintiff's sole remaining claim.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated:   February 4, 2020
        Albany, NY

Daniel J. Stewart
U.S. Magistrate Judge

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).