**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHARLES J. SMITH,

                              Plaintiff,

   v.                                               9:18-CV-1107
                                                            (DNH/DJS)

JAYNES, *Corrections Officer*,

                              Defendant.

---

**APPEARANCES:**                          **OF COUNSEL:**

CHARLES J. SMITH
96-A-6765
Plaintiff, *Pro Se*
Greene Correctional Facility
P.O. Box 975
Coxsackie, New York 12051

HON. LETITIA JAMES                ERIK BOULE PINSONNAULT, ESQ.
New York State Attorney General     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

# REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 alleging that Defendant retaliated against Plaintiff in violation of the First Amendment while Plaintiff was an inmate at Cayuga Correctional Facility. Dkt. Nos. 14 & 16. Plaintiff has filed two Motions for Summary Judgment. Dkt. Nos. 114 & 115. Defendant has cross-moved for summary judgment. Dkt. No. 119.

## I. FACTUAL BACKGROUND

This case arises from an incident at Cayuga Correctional Facility in July 2018. Dkt. No. 14, Am. Compl. at p. 5. On July 19, 2018, Plaintiff was assigned to work in Cayuga mess hall. Dkt. No. 119-3, Jaynes Decl. at ¶ 9. Plaintiff claims that when his shift was over he requested to go to the law library. Dkt. No. 114-2 at p. 19. The parties dispute the exact nature of the interactions that followed between Plaintiff and Defendant. Plaintiff claims that Defendant took a series of actions to retaliate against Plaintiff for this request and other things. *Id.* at pp. 19-21. Defendant maintains that he gave Plaintiff a direct order with which Plaintiff refused to comply. Jaynes Decl. at ¶ 9. As a result of this interaction, Defendant issued Plaintiff an inmate Misbehavior Report. *Id.* at Ex. A. After being issued the misbehavior report, Plaintiff was transferred to the Special Housing Unit. Dkt. No. 114-2 at pp. 14-15. After a hearing Plaintiff was found guilty of the charges set forth in the misbehavior report. Dkt. No. 119-2, Pinsonnault Decl., Ex. B at

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

p. 153. That determination was affirmed on administrative appeal. Dkt. No. 114-3 at p. 15.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies

*1. Exhaustion Procedure*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 578 U.S. 632, 638 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the

IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

*2. The Record Regarding the Filing of a Grievance*

Plaintiff's retaliation claim is one that must be exhausted under the PLRA. *Clark v. Gardner*, 2021 WL 1200328, at *27 (N.D.N.Y. Mar. 8, 2021). Based on the record presented on the Motions, the Court recommends that summary judgment is appropriate based on Plaintiff's failure to exhaust his administrative remedies.

The day the Jaynes misbehavior report was issued, Plaintiff filed a grievance which alleged in part that his property was being improperly taken. Dkt. No. 119-4, Swan Decl. at Ex. B. That grievance was given Grievance Number CAY-18375-18. Swan Decl. at ¶ 20. That grievance was categorized by staff at Cayuga as a grievance regarding inmate property. Dkt. No. 119-5, Seguin Decl. at Ex. A. Though not specifically raised by Defendant in this Motion, the Court notes that it has previously concluded that this grievance was insufficient to exhaust Plaintiff's administrative remedies under the PLRA. *Smith v. Jaynes*, 2020 WL 1149856, at *3 (N.D.N.Y. Feb. 4, 2020), *report and*

*recommendation adopted*, 2020 WL 1140665 (N.D.N.Y. Mar. 9, 2020). "[T]hat determination is law of the case." *Allah v. Adams*, 2021 WL 5707380, at *3 (W.D.N.Y. Dec. 2, 2021). Summary judgment was previously denied on the ground that factual questions existed as to whether the grievance process was truly available to Plaintiff, *Smith v. Jaynes*, 2020 WL 1149856, at *4, and so the Court turns now to that question.

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 578 U.S. at 642. As the Supreme Court stated in *Ross*, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Plaintiff bears the burden of establishing that the grievance procedures were unavailable within the meaning of *Ross*. *Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019).

The record establishes that none of the *Ross* exceptions are applicable here. Plaintiff has fully exhausted administrative grievances through the DOCCS grievance program on multiple other occasions. Seguin Decl. at Ex. A. "This shows that Plaintiff

did not view the filing of grievances as a dead end. It also demonstrates that he clearly understood DOCCS' inmate grievance policy and could navigate it when he wished to pursue a grievance. As such, the first two exceptions identified under *Ross* are not applicable here." *Walker v. Ball*, 2018 WL 1415212, at *5 (N.D.N.Y. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1406632 (N.D.N.Y. Mar. 20, 2018); *see also Lurch v. Bui*, 2020 WL 8450543, at *5 (N.D.N.Y. Dec. 8, 2020), *report and recommendation adopted sub nom. Lurch v. Jones*, 2021 WL 392486 (N.D.N.Y. Feb. 4, 2021).

Nor has Plaintiff raised any triable question of fact as to the applicability of the third *Ross* exception. He makes several arguments regarding the alleged unavailability of the grievance process, Dkt. No. 115-2 at pp. 23-29, but none is sufficient to defeat summary judgment.

First, Plaintiff contends that based on his experience as a "25 or more year veteran of the inmate prison system [he] knows quite well" that the inmate grievance system is not fully functional. Dkt. No. 115-2 at p. 24. Plaintiff's generalized claim about alleged historical problems with the grievance program "in no way satisfies his burden of showing, or even raising a material issue of fact as to, the availability of the [inmate grievance program] under *Ross*." *Richard v. LeClaire*, 2019 WL 5197041, at *8 (N.D.N.Y. May 6, 2019), *report and recommendation adopted*, 2019 WL 4233184 (N.D.N.Y. Sept. 6, 2019).

Second, Plaintiff's reference to an alleged lack of writing supplies, Dkt. No. 115-2 at p. 24, is inconsistent with his later claim that he, in fact, filed two grievances. As to that claim, Plaintiff alleges broadly that a separate retaliation grievance was filed and never processed. *Id.* His conclusory allegations in this regard, however, are insufficient. *Richard v. Leclaire*, 2019 WL 4233184, at *3 (N.D.N.Y. Sept. 6, 2019); *Aviles v. Tucker*, 2016 WL 4619120, at *4 (S.D.N.Y. Sept. 1, 2016). While he states now what the substance of that grievance was, he offers no evidence of any communication attempting to identify what happened to that grievance. The record is devoid of any request by Plaintiff to be notified of the processing of that grievance or any communications at all with grievance staff or other prison officials about that alleged grievance. "Courts have consistently held [ ] that an inmate's general claim that his grievance was lost or destroyed does not excuse the exhaustion requirement." *Rosado v. Fessetto*, 2010 WL 3808813, at *7 (N.D.N.Y. Aug. 4, 2010); *see also Rodriguez v. Cross*, 2017 WL 2791063, at *7 (N.D.N.Y. May 9, 2017) ("Courts in this Circuit have continuously held that mere contentions or speculation of grievances being misplaced by officers do not create a genuine issue of material fact when there is no evidence to support the allegations."). For an inmate with Plaintiff's experience with the grievance process, this failure to address the allegedly missing grievance belies any claim that prison administrators' "machination, misrepresentation, or intimidation" denied Plaintiff the ability to file a grievance against Jaynes. *Ross v. Blake*, 578 U.S. at 643-44. Nor does Plaintiff attempt to argue why one grievance, but not another was processed.

For these reasons, the Court recommends that the Defendants' Motion for Summary Judgment be granted based on Plaintiff's failure to exhaust his administrative remedies.[2]

### B. Plaintiff's Retaliation Claim

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action.'" *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). This is true because given the nature of a retaliation claim they are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d at 491.

As Defendant's Motion demonstrates, there is some level of uncertainty in this case as to what protected activity Plaintiff alleges he engaged in or exactly what

---

[2] Despite this recommendation, the Court will address Defendant's arguments on the merits.

retaliatory conduct he alleges Defendant took against him. "An adverse action is defined as retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (internal quotation omitted). Plaintiff claims, in part, that Defendant Jaynes retaliated against him for requesting to speak to a supervisor. Dkt. No. 114-2 at p. 17. This claim lacks merit as "it does not appear that the request to speak to a supervisor qualifies as a protected activity." *Dowling v. Barkman*, 2019 WL 7971868, at *3 n. 1 (N.D.N.Y. Dec. 20, 2019), *report and recommendation adopted sub nom. Dowling v. Schleicher*, 2020 WL 103480 (N.D.N.Y. Jan. 8, 2020) (citing *Jones v. McElroy*, 2015 WL 410928, at *6 (E.D. Cal. Jan. 30, 2015), *report and recommendation adopted*, 2015 WL 1014653 (E.D. Cal. Mar. 5, 2015) ("the court has found no authority holding that a prisoner's request to speak to a correctional supervisor is constitutionally protected speech.")); *see also Myers v. Saxton*, 2021 WL 1821341, at *8 (N.D.N.Y. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 1291104 (N.D.N.Y. Apr. 7, 2021). Nor does Plaintiff's allegation that Defendant retaliated against him by making him clean tables in the mess hall, Dkt. No. 114-2 at p. 19, establish an adverse action sufficient to support a retaliation claim. Plaintiff was a mess hall worker. *Id.* at p. 18; Jaynes Decl. at ¶ 9. A correctional staff member directing a mess hall employee to do such work is not the type of direction that would inhibit a reasonably prudent person from exercising their rights.

The Court presumes, however, that the Plaintiff's request to go to the law library to work on legal issues and the Jaynes misbehavior report satisfy the requirements of protected activity and adverse action for purposes of the pending Motions. Plaintiff, however, has not raised a question of fact as to a causal connection between the two.

When a retaliation claim is based upon the filing of a misbehavior report, "[t]he difficulty lies in establishing a retaliatory motive." *Barclay v. N.Y.*, 477 F. Supp. 2d 546, 558 (N.D.N.Y. 2007). "More than conclusory allegations [regarding retaliatory motive] are required to survive a summary judgment motion." *Barclay v. N.Y.*, 477 F. Supp. 2d at 558 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995)). Plaintiff's allegations are just this sort of purely conclusory claim. *See* Dkt. No. 114-2 at pp. 20-21 (referring to the first and second "wind of retaliation"). Plaintiff does not allege that Jaynes made any statements regarding an allegedly retaliatory motive for issuing the misbehavior reports, nor is there any evidence that the misbehavior reports were dismissed. *Ross v. Koenigsmann*, 2016 WL 11480164, at *17 (N.D.N.Y. Sept. 8, 2016), *report and recommendation adopted*, 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016). The record establishes that Plaintiff was found guilty of the misbehavior report. Pinsonnault Decl. at Ex. B. The fact that Plaintiff was ultimately found guilty of conduct charged in the misbehavior report "certainly suggests that there was a valid basis for the issuance of the report, and Plaintiff's conclusory assertion that it was retaliatory in nature fails to state a plausible claim." *Abreu v. Farley*, 2019 WL 1230778, at *23 (W.D.N.Y. Mar. 15, 2019) (citing cases) (internal quotations and citations omitted). Accordingly, Defendant has

met the burden of establishing that the misbehavior report would have been issued regardless of any retaliatory animus and, as a result, cannot be liable on Plaintiff's retaliation claim. *Cooper v. A. Annucci*, 2020 WL 8474802, at *17 (N.D.N.Y. Nov. 9, 2020), *report and recommendation adopted sub nom. Cooper v. DeGraff*, 2021 WL 235946 (N.D.N.Y. Jan. 25, 2021).

Defendant is also entitled to qualified immunity on this claim. Qualified immunity provides a "shield[ ] . . . from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct . . . . To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted). Qualified immunity attaches if "'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In other words, qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. at 341. Although it is not the case that "an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Here, the record clearly demonstrates that Plaintiff was found guilty of the misbehavior report. Under clearly established law, a retaliation claim fails when, even

assuming the existence of a retaliatory motive, the same action would have been taken against a plaintiff. *Scott v. Coughlin*, 344 F.3d 282, 288 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Accordingly, the Court additionally recommends that Defendant's Motion for Summary Judgment be granted on these grounds.[3]

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion for Summary Judgment (Dkt. No. 119) be **GRANTED**; and it is further

**RECOMMENDED**, that Plaintiff's Motions for Summary Judgment (Dkt. Nos. 114 & 115) be **DENIED**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*,

---

[3] Given the recommendations above that Defendant is entitled to judgment, the Court further recommends that Plaintiff's Motions for Summary Judgment for denied.

892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 18, 2022
      Albany, New York

                                      Daniel J. Stewart
                                      U.S. Magistrate Judge